PACIFIC RAILROAD (of Missouri) *v.* MISSOURI PACIFIC RY. Co. and others.

(*Circuit Court, E. D. Missouri.*   April, 1881.)

1. EQUITY—PRACTICE—IMPEACHING DECREE—FRAUD.

On a bill for relief against a decree obtained by fraud, no relief will be granted if complainant had knowledge of the facts constituting the fraud, and in the exercise of due diligence might have made them known to the court pending the original suit; nor if complainant might, by the use of due diligence, have ascertained the facts and pleaded them in the original suit.

2. SAME—BILL OF RELIEF.

A bill seeking relief from a decree obtained by fraud must allege that complainant had no knowledge of the fraud now alleged, and no notice thereof at the time of the original suit.

3. CORPORATION—KNOWLEDGE OF STOCKHOLDERS.

Upon the question of notice there is no distinction between the corporation and its officers or stockholders; so, if stockholders were advised of the foreclosure suit, and of the facts now charged as constituting fraud in the execution of the bonds and mortgages sued on in the original suit, and had an opportunity to intervene and defend, and did not do so, the corporation is concluded by their laches.

4. STOCKHOLDER—LACHES—LOSS OF REMEDY.

Where the stockholders, having full knowledge of all the facts and an opportunity to move in the original suit before decree, or to file a bill immediately upon the rendition of the decree, failed to do either for a period of four years, and in the mean time the decree had been fully executed, the property sold thereunder to a new company and the sale confirmed, and the stock and bonds of the new company gone into the market, it is too late for them to obtain relief from a decree alleged to have been obtained by fraud.

Bill in Equity to set aside a decree of this court for fraud.

*Glover & Shepley,* for complainant.

*Melville C. Day, J. O. Broadhead,* and *Thos. J. Portis,* for respondents.

McCRARY, C. J.   This is either an original bill to impeach a decree of this court for fraud, or a bill of review upon newly-discovered facts and evidence.   We think it is the former; and as that is in accordance with the claim of complainant's counsel, we will so regard it, remarking, however, that if it be the latter it is clearly bad, because filed too late, and also because filed without the leave of the court. *Ricker* v. *Powell,* 100 U. S. 109; Story, Eq. Pl. §§ 412–414.

Considered as an original bill, is it sufficient?   Courts of equity have undoubted jurisdiction to entertain bills to set aside judgments at law or decrees in chancery on the ground of fraud.   The rules by which the sufficiency of such bills are to be determined are the same,

whether the purpose be to set aside a judgment at law or a decree in chancery. *U. S.* v. *Throckmorton*, 98 U. S. 61.

Among these rules are the following:

(1) No relief will be granted if the complainant had knowledge of the facts constituting the fraud, and in the exercise of due diligence might have made them known to the court pending the original suit. *Foster* v. *Wood*, 6 Johns. Ch. 86; *Lansing* v. *Eddy*, 1 Johns. Ch. 49; *Kibbe* v. *Benson*, 17 Wall. 627.

(2) Nor will relief be granted if the complainant might, by the use of due diligence, have ascertained the facts and pleaded them in the original suit. *U. S.* v. *Throckmorton, supra.*

Applying these rules to the present case we are brought at once to the inquiry whether the present complainant, a corporate body, which was a defendant in the suit of Ketchum, had notice of the fraud now alleged, or might have learned the facts by proper diligence, and might have pleaded them in that suit. We find no allegation in the bill charging that the complainant was ignorant of the facts pending the original suit, much less that it was unable after due diligence to ascertain and plead them. In this respect the bill is insufficient. There is a want of these material affirmative allegations. But the demurrer goes further, and raises the question whether the bill and exhibits do not show affirmatively that the present complainant, through its stockholders, had notice of the foreclosure suit, knowledge of the defence now insisted upon against the third-mortgage bonds, and ample opportunity to make that defence.

It is, we think, very clear that, in considering the question of notice, no distinction can be made between the corporation and its officers and stockholders. We cannot separate them and say the officers and stockholders knew of the fraud, but the corporation did not. If, therefore, the stockholders were advised of the foreclosure suit, and of the facts now charged as constituting fraud in the execution of the bonds and mortgages sued on therein, and had an opportunity to intervene and defend, and did not do so, the corporation is concluded by their laches.

That the stockholders, as a body, were advised of the foreclosure suit, and took action looking to its defence, and that they did not rely upon the officers of the corporation, but distrusted and antagonized them, is clear from the allegations of the forty-fifth count of the bill, by which it is charged that the stockholders, in writing, requested the directors to resign that others might be appointed in their place who would properly attend to the duties of their office;

also that the stockholders requested said directors to employ counsel other than James Baker to defend the suit of Ketchum.

It further appears that at a meeting of stockholders held March 27, 1876, at St. Louis, several months before the rendition of the decree of foreclosure, a resolution was adopted requesting the directors to employ counsel to aid in the defence of the foreclosure suit. This meeting was held while the suit was pending, and in the city where the court was sitting.   See record *Ketchum Case*, 50.   It was not enough for the stockholders to content themselves with the passage of this resolution, especially as the bill avers that it was disregarded.   They were bound to go forward, with due diligence, in the assertion of their rights, which they knew were imperilled; and we see enough in the record to satisfy us that they would have done so but for the fact that they, or their managing committee to whom they entrusted their interests, afterwards became satisfied with and assented to the decree.

It is very apparent that the stockholders were dissatisfied with the action of the directors and attorney of the company in the defence of the foreclosure suit.   They were therefore put upon inquiry, and bound to do whatever it was in their power to do to protect their interests.   Any individual stockholder was at liberty to apply to the court for leave to intervene and defend.   The stockholders were parties in interest, and upon representing that fact to the court and showing that the officers were not defending in good faith, they would, without doubt, have been allowed to defend.   That the court in that case recognized the propriety of this is clear from the fact that several stockholders asked and readily obtained leave to appear and defend.

It may be true, as a general proposition, that the stockholders of a corporation are not bound to intervene in a suit against the corporation for the protection of their rights.   If the officers fraudulently consent to judgment or decree, the stockholders may, perhaps, afterwards file a bill to set it aside, provided they do so within a reasonable time after the discovery of the fraud.   But we do not think it can be maintained that the stockholders of a corporation, who have notice that the officers are not faithfully defending a suit, can neglect to intervene, or to take any steps in the way of endeavoring to do so; permit final judgment or decree to be entered and sale to take place, and then, after years have elapsed, be permitted to attack the validity of the proceedings.

If this were not a rule applicable generally to all corporations, it would still, we think, apply to this particular corporation, for the reason that its charter vests in the stockholders, in annual meeting assembled, power to do and perform all corporate acts authorized by the charter. Laws Mo. 1851, p. 268.

We have already seen that the stockholders were aware of the suit; that their attention was directed to it; that they distrusted the officers of the corporation, and took steps looking to the assertion of their rights. It is also apparent, from the record of the proceedings in the *Ketchum Case*, that they knew the facts now set up by way of defence. Akers, one of their number, and also the county of St. Louis, on behalf of themselves and such other stockholders as might join therein, appeared in said suit, and by leave of court answered and filed cross-bills, setting forth in substance the principal facts now relied upon. Record *Ketchum Suit*, 24.

It was therefore correctly stated by the judges of this court, in their return to the alternative writ of *mandamus* in *Ex parte Cutting*, that "said Cowdrey and all other stockholders who might join with him were in court during all proceedings of the term when the decree of foreclosure and sale was entered, and had the fullest opportunity to intervene by joining in the answers and cross-bills filed by Akers and said St. Louis county, and otherwise."

This, upon the ground that the stockholders were bound to take notice of the proceedings of the stockholders' meetings, and were also bound by the action of their committee appointed to represent them in this litigation, as well as upon the further ground that some of their number actually appeared and were admitted as parties to the suit. We are therefore constrained to hold that the stockholders were concluded by the decree and sale, and that whatever concludes the stockholders individually and collectively concludes the corporation as well. Another consideration has great weight with us. The stockholders of the Pacific Railroad, having knowledge of all the facts, and an opportunity to move in the original suit before decree, or to file a bill immediately upon the rendition of the decree, failed to do either during a period of four years. In the mean time the decree had been fully executed; the property had been sold and the sale had been confirmed; the purchaser at the sale had conveyed to a new corporation, which had issued new stock and executed negotiable bonds for large sums secured by mortgage upon the property. The stock and bonds of the new company have gone into the market.

Whether it is all held by innocent purchasers we are, of course, in the absence of proof, unable to say, but the facts and circumstances to which we have adverted certainly furnish strong reasons for holding that the stockholders and the corporation have been guilty of laches. The case of *Wetmore* v. *St. Paul, etc., R. Co.* 1 McCrary, C. C. 466, was a bill by stockholders to set aside a sale and the decree of foreclosure upon facts somewhat similar to those presented by the present bill.

Mr. Justice Miller in that case said:

"The purpose of the petition is no less than to set aside the sale of a railroad, which is, perhaps, worth $20,000,000 or more,—a road which has been reorganized since the purchase, with a new set of directors, a new set of stockholders, very largely, and, above all, a new set of bondholders. The road was purchased under a decree of this court, the purchase was confirmed, and a new company organized, which has been in possession of the road over a year, and has issued, as I say, some ten or fifteen million dollars of new bonds, held all over the world; and now original bondholders in the old company representing $1,500,000 come and ask that all these proceedings be set aside, and that we proceed *de novo* to sell the road."

And again:

"The sale was had. A part of the original bondholders were, under a special organization, according to the laws of Minnesota, purchasers. That did not settle the controversy or the rights of the parties absolutely. The master who made that sale was required to report it into court. He did report it, and the sale was confirmed.

"Now, that sale being confirmed, a deed made by the master, property turned over and delivered to the purchasers, those purchasers having reorganized under another corporate name, doubtless a great deal of the stock that they held passed into the hands of other men,—certainly the bonds that they issued upon the strength of that new organization to the extent of $8,000,000 having passed into the hand of other men,—these parties now, for the first time, come into this court and ask that they be permitted to upset all the transactions; to do that which they did not seek in the five years of litigation, namely, to be made parties to this suit, and then to be treated in the double aspect of persons who are parties to the suit and having all the rights of parties from the beginning, and also in the aspect of persons who were not parties to the suit, and whose rights have not been foreclosed.

"No authority is shown, no precedent is shown, and I do not believe any can be shown for such a proceeding. It is so anomalous, so unusual, so much out of the way, that I think it requires express authority in the way of precedent or statute to show that such a thing as that can be done."

Numerous other questions, and some of them important, and perhaps doubtful questions, have been discussed at the bar, but the conclusion reached renders their decision unnecessary. Among them is

the important question, whether, regarding this as an original proceeding to set aside a decree of this court for fraud, the court has jurisdiction irrespective of the citizenship of the parties.

Another is the question whether such a bill, like a bill of review on the ground of newly-discovered facts, must be filed within the period for taking an appeal. The affirmative of the latter proposition seems to have been held in Massachusetts and elsewhere. *Evans* v. *Bacon,* 99 Mass. 213.

The demurrer to the bill is sustained.

TREAT, D. J., concurs.