### STINEMAN COAL & COKE CO. v. UNITED STATES.

(District Court, E. D. Pennsylvania. June 27, 1923.)

No. 6382.

1. United States ⊂⊃70(1)—Conditions of contract to govern, when supplies to be delivered at navy yard, held inapplicable to delivery of coal at ships.

   Provision of contract for supplying of coal to the government, that when not otherwise specifically stated supplies and materials required to be delivered "at the navy yard" should be delivered in accordance with conditions therein specified, did not apply to deliveries, not to be made at the navy yard, but "at ships."

2. United States ⊂⊃70(1)—Contract to deliver coal "at ship" held to require delivery at ship's side, and loss thereafter was at government's risk.

   Contract to supply coal for the government, providing for delivery "at Philadelphia, Pa.—Ships," and providing that the seller should be reimbursed for rail transportation and lighterage, required delivery at the ship's side, and after barge containing the coal was placed alongside ship, and taken possession of by government tug, loss from capsizing was at the government's risk.

In Equity. Suit by the Stineman Coal & Coke Company against the United States. On plaintiff's motion for judgment on point of law reserved, and on defendant's motion for new trial. Judgment for plaintiff on the verdict.

Lewis, Adler & Laws, of Philadelphia, Pa., for plaintiff.

George W. Coles, U. S. Dist. Atty., and Joseph L. Kun, Asst. U. S. Dist. Atty., both of Philadelphia, Pa.

THOMPSON, District Judge. This suit was brought by petition under the Tucker Act (24 Stat. 505) to recover $1,143.18, the agreed price of 346 tons of coal alleged to have been delivered to the United States, together with $641.48 for rail transportation and war tax, and the sum of $48.44 for water transportation of the coal, under a contract entered into between the petitioner and the Paymaster General of the Navy on behalf of the United States. The contract consisted of an accepted order for the sale and delivery of a total of 30,000 gross tons of best bituminous coal at the price so far as this claim is concerned of $3.304 per ton f. o. b. mines, "for delivery at Philadelphia, Pa.—Ships." The evidence at the trial showed that 692 tons of coal were shipped under the contract to Greenwich Piers, Philadelphia, where it was inspected by the proper officer of the Navy and accepted as to quality and quantity; that on May 1, 1919, it was loaded upon the two-box hinged barge Clinton belonging to Goucher & Co. and employed by the petitioner, with the approval of the naval officer in charge, and towed by a tug of Goucher & Co. to Pier 27, North Wharves. It was then towed to Pier 24, North Wharves, and, there being no room alongside the steamship Mercury then lying there, to which the coal was destined, the tug brought the barge back to Pier 27. A government tug then took the barge alongside the Mercury, and stevedores employed by the Navy unloaded the forward box by means of a steam digger into the ship. Goucher's tug then took away the forward box, and the government tug put the stern box alongside the steamship. After the forward box had been taken away and the stern box put in alongside of the ship, the work of unloading ended for the night. During the night the stern box capsized, dumping the coal into the river.

The controversy in the case is upon the question whether there had been a delivery of the coal in the stern box, under the terms of the contract prior to its capsizing. The jury was directed to find a verdict in favor of the plaintiff for $1,833.10, subject to the point of law reserved whether, under the evidence, the plaintiff could recover. The determination of the question turns upon the meaning of the language in the contract, "For delivery at Philadelphia, Pa.—Ships." There was no dispute between the petitioner and the respondent that the language is to be considered as though it read "For delivery at ships, Philadelphia, Pa." Paragraph 10 of the contract provides:

"The supplier will be allowed reimbursement for expenses actually incurred in connection with transportation, lighterage, hauling, skidding, leveling, switching, carrying, wheeling, trimming, bunkering, storing, etc."

There is no dispute that, under the contract, the petitioner was to be responsible for rail transportation and lighterage and to be reimbursed for the expenses incurred in connection therewith. It is contended on behalf of the government, however, that the words "at ships" are to be construed in the same manner as though read "in ships," and attention is directed to certain provisions of paragraph 8 of the conditions in the contract concerning deliveries.

[1] The introductory part of condition 8 reads as follows:

"*Deliveries.* 8. When not otherwise specifically stated in the specifications under each class of this order, supplies and materials required delivered 'At the Navy Yard ———,' shall be delivered in accordance with the following."

It appears, therefore, that the conditions for deliveries under this head apply only to deliveries required at the Navy Yard and are not applicable to delivery "at ships" as required by the contract.

[2] While the word "at" has been construed as equivalent to "in," when used in connection with a place, such as the District of Columbia (Chesapeake Canal v. Key, 3 Cranch, 599, Fed. Cas. No. 2649), it has also been construed as expressing the idea of nearness of place and as being less definite than if "in" or "on" were used (Kibbe v. Benson, 84 U. S. [17 Wall.] 624, 21 L. Ed. 741), and it is commonly used as the equivalent of "near" or "about" (4 Cyc. 366).

In connection with vessels, the use of the words "at ships" is unusual. The common shipping or maritime term expressing the petitioner's idea would be "at ship's side," and that expressing the respondent's idea would be "on board." I think the language in the connection in which it is used means "at ship's side," and must be so construed in the light of the conduct of the parties; for, after the barge was taken to the vicinity of the ship, she was taken possession of and placed by the government tug. From that time on the petitioner had no further control of the barge or her cargo. The unloading of the barge and the loading of the coal on board the ship was done by stevedores employed by the government officers and at its expense. The rail transportation and the water transportation, consisting of lighterage, was to be performed by the petitioner; but, when the lighter was turned over to the government tug, its part of the contract was performed, and there was, therefore, a delivery under the contract "at" the ship, and the petitioner's responsibility ended. Clearly, therefore, the loss of the coal by the capsizing of the stern box occurred after delivery, and after the petitioner's performance of its contract was completed.

Judgment will be entered on the verdict for $1,833.10, with interest from May 16, 1922, and with costs, to be taxed by the clerk.