### KIBBE *v.* BENSON.

1. Under a statute which requires that in actions of ejectment where the premises are actually occupied, the declaration shall be served by delivering a copy thereof . . . to the defendant named therein, who shall be in the occupancy of the premises, or if he be absent by leaving the same with some white person of the family, of the age of ten years or upwards, "*at* the dwelling-house of such defendant;" a leaving of the declaration with such a white person of the family when he is at a distance of one hundred and twenty-five feet from the house and in a corner of the yard of the house, is not a compliance with the requirement of the statute.
2. Judgment obtained by default, on such a service, the defendant not having had actual notice of what was done, and averring a good title in himself, set aside on bill in equity.

APPEAL from the Circuit Court for the Southern District of Illinois; the case being thus:

A statute of Illinois, relating to actions of ejectment, adopted by the Federal court sitting in the Illinois district,

makes the following provision relative to the service of the writ:

"If the premises are actually occupied the declaration shall be served by delivering a copy thereof with the notice above prescribed to the defendant named therein, who shall be in the occupancy thereof, or by leaving the same with some white person of the family, of the age of ten years or upwards, at the dwelling-house of such defendant, if he be absent."*

This statute and this provision of it being in force, one Kibbe brought ejectment in the court below at January Term, 1867, against a certain Pleasant Benson, to recover possession of a tract of land in Illinois, containing eighty acres, upon which there was a dwelling-house in which Benson with his family lived. A declaration was filed by the plaintiff, and to it was appended an affidavit made by one Turner, not the marshal or then an officer of justice, though an agent of Kibbe, that on a day specified he, Turner, had served the declaration and the usual notice to plead by delivering a copy to John Benson, the father of the defendant in the case, and a member of his family, *at the dwelling-house of the said defendant.*

No plea being put in, judgment was entered by default at June Term, 1867, but no immediate steps were taken to enforce the judgment. In September, 1869, a writ of possession was issued on the judgment, and Benson was about to be turned out.

Hereupon he filed a bill in the court below against Kibbe, to set aside the judgment entered as above mentioned.

The bill, averring a good and perfect title to the land in the complainant, set forth the facts above stated, but denied that the declaration was served on the father, as sworn to in the affidavit filed with the declaration, or that it was delivered at the complainant's dwelling-house to any member of the complainant's family. It averred, in addition, that the complainant was ignorant of the commencement or existence of such suit until September, 1869, when a deputy

---

marshal appeared at his house demanding possession of the land on which he was living, by virtue of an execution issued upon the said judgment; that the complainant was not informed of the existence of the judgment until more than two years had elapsed from its recovery, within which time he would have been entitled under the statutes of Illinois to move to set it aside.

The answer of Kibbe denied the material allegations of the bill, averred that the declaration *was* delivered to Benson, the father, who was then and there informed of the contents of the paper delivered to him and had full notice of its purpose and object, and it denied specifically that the writ of possession was withheld for the term of two years.

One principal question, therefore—a question preliminary to any one of law—was a question of fact; in what manner, if in any, had the declaration been served?

On this point the testimony of Turner, who made the original affidavit, and of one Paullin, who was with him when he made whatever service he did make, were given in support of the service; and the testimony of John Benson, the father (to whom Turner alleged that he had given the declaration), and of Pleasant Benson, the now complainant, were given against it.

Turner testified that on the 13th of September, 1866, he went to the dwelling-house of Benson for the purpose of serving him with the declaration, that he knocked at the front door of the house, inquired for Mr. Benson, was told by the person opening the door that he was away from home, and as Turner testified that he thought he was informed, absent in Missouri; that afterwards on the same day, in the presence of Paullin, he had a conversation with John Benson, the father, and told him that he had come to make service of the declaration, unless some compromise should be made; that while Benson was standing near the southeast corner of the yard, adjoining the dwelling-house and inside of the yard, *and not over one hundred and twenty-five feet from the dwelling-house,* he handed to him a copy of the declaration, explaining its nature and character, reading to

him the whole of the notice therein, and requesting him to hand the same to his son, Pleasant Benson; that the said John took the same, and after taking it into his hands threw it upon the ground, muttering some angry words.

Paullin testified substantially to the same thing.

Each of these witnesses was subjected to a rigorous cross-examination.

On the other hand, John Benson testified that no paper was read to him or received by him on the 13th of September, 1866; *that at a point from about one hundred and fifty to one hundred and eighty rods from the house, and not within the inclosure,* a paper was offered to him, which he utterly refused to take and did not take.

Pleasant Benson testified that he had no notice or knowledge, in any form, of the declaration or of its service; that his father did not show him, deliver to him, or inform him that a declaration or any other paper had been served upon him in relation to the land.

The Circuit Court decided that the judgment at law should be vacated and set aside, the cause reinstated upon the docket, and be tried in the same manner as though no former trial had been had therein. It was from this decree that the present appeal was taken.

*No counsel appeared for the appellant; Mr. H. S. Greene, for the appellee.*

Mr. Justice HUNT delivered the opinion of the court.

The cases in which equity will interfere to relieve against a judgment at law, are reasonably well settled.

1st. It will not relieve against a judgment at law on the ground of its being contrary to equity, unless the defendant was ignorant of the fact creating such equity pending the trial, or it could not have been received as a defence.*

2d. If the party could have defended the suit, but allowed judgment to go by his own neglect, he cannot have relief

---

* Lansing v. Eddy, 1 Johnson's Chancery, 49; Barker v. Elkins, Ib. 465; Norton v. Woods, 22 Wendell, 520.

in equity for a matter which he might have availed himself of at law.*

3d. If there be a defence, but the party could not avail himself of it in the suit at law, by reason of fraud or accident, equity will relieve against the judgment at law. The rule is well expressed by C. J. Marshall in the *Marine Insurance Company* v. *Hodgson:*† "Without attempting (he says) to draw any precise line to which equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said, that any fact which clearly proves it to be against conscience to execute a judgment and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

The question of jurisdiction in the present case is identical with the question of the merits. If the party has established the facts on which he relies to sustain his action, he comes within the rules giving relief in equity against judgments at law. If he is not one of the class entitled to such relief, he has no standing in a court of equity. A determination of the allegations of fact upon which the jurisdiction rests, will, therefore, determine the entire case.

The most important fact in dispute concerns the service of the declaration upon John Benson, the father of the original defendant, and the manner and place of such service.

Turner testifies that the service was made at a point not exceeding one hundred and twenty-five feet from the dwelling-house; but does not assert that it was within any of the adjoining buildings or out-houses; and if within what is familiarly called the door-yard of the establishment, it was at a remote corner of the yard. Benson, the father, locates the scene at a point one hundred and fifty to one hundred

---

* Hewlett *v.* Hewlett, 4 Edward's Chancery, 7; Floyd *v.* Jayne, 6 Johnson's Chancery, 479; Graham *v.* Stagg, 2 Paige, 321.

† 7 Cranch, 336.

and eighty rods distant from the dwelling-house. No one would contend that a service at this last point could with propriety be called a service at the dwelling-house.

Some latitude was, no doubt, intended to be given by this statute. It is not required that the paper shall be delivered to a person who is in the house at the time of such delivery. It may be delivered to one who is at the dwelling-house merely. This expresses the idea of nearness of place, and is less definite than if it had been said, in the house or on the house. To say that one is at home, may mean that he is in the town or city of his residence, or it may mean that he is upon his grounds or in his house.

The intended effect of this expression is illustrated by the other portion of the provision, which forbids (by implication) the delivery of the paper to one who is not of the age of ten years or upwards. If delivered to a young child, there would not be that probability of its delivery to the defendant in the suit, which might be expected if it was left with one understanding the necessity of its delivery to the person for whom it was intended. Both the person upon whom, and the place where, service may thus be made, are intended to secure a delivery to the party interested. It is not unreasonable to require that it should be delivered on the steps or on a portico, or in some out-house adjoining to or immediately connected with the family mansion, where, if dropped or left, it would be likely to reach its destination. A distance of one hundred and twenty-five feet and in a corner of the yard is not a compliance with this requirement.

The case falls within the scope of the authorities in which relief is given against a judgment. When Turner made affidavit that he served the declaration, by delivering the same to John Benson, at the dwelling-house of his son, he erred either as to the law or the fact. If he did not deliver the paper to Benson at all, he was wrong in his statement of fact. If he did deliver it, he was wrong in his conclusion that he delivered it at the dwelling-house of his son. A judgment has been entered where the service was insuffi-

cient, and the defendant has had no opportunity to defend his estate. It is not necessary to decide upon the conflicting evidence. It is a case, where, either by fraud or by accident, or by mistake, without fault on his part, the defendant has been deprived of the opportunity to make his defence, and within the rule laid down by C. J. Marshall, the judgment must be set aside, and an opportunity afforded to test the question in a court of law.

JUDGMENT AFFIRMED.