680 P.2d 196

**LIBERTY MUTUAL INSURANCE CO., a foreign corporation, Plaintiff/Appellee,**

v.

**Jim RAPTON and Cheryl Rapton, husband and wife, d/b/a Worktree Lawn & Sprinkler, Defendants/Appellants.**

**No. 2 CA–CIV 4918.**

Court of Appeals of Arizona,
Division 2.

Feb. 28, 1984.

Charles M. Giles, P.C., Jim D. Himelic, P.C. by Jim D. Himelic, Tucson, for plaintiff/appellee.

John W. Acer, Phoenix, and Dennis L. Parrott, Tucson, for defendants/appellants.

## OPINION

HATHAWAY, Judge.

We are asked to determine whether service of the complaint was proper and, if it was proper, whether appellant should nonetheless be relieved of the default judgment against him because of mistake, inadvertence or excusable neglect. The facts giving rise to this appeal are essentially not in dispute and are briefly recounted.

Plaintiff/appellee Liberty Mutual Insurance Company filed a complaint on November 12, 1982, against appellant, alleging a breach of contract arising from the failure to pay some outstanding insurance premiums. The only major factual dispute is that appellant claims he does not owe appellee any money because he cancelled his policy with appellee and entered a contract with another insurer. On November 21, service of the complaint and an application for issuance of provisional remedies was made on Cheryl Miller [Ms. Miller married defendant six weeks later and is now Mrs. Rapton] at 11426 North Cave Creek Road in Phoenix. Appellant failed to answer the complaint and a default judgment was entered against him on December 14, 1982, for the entire amount claimed plus costs. Appellee attempted to garnish a bank account belonging to appellant at the United Bank in Phoenix on January 5, 1983. Appellant claims that he first discovered the

default judgment a short time after the writ of garnishment was served and promptly moved to set it aside, based on his argument of improper service and excusable neglect. After a hearing, the motion to set aside the judgment was denied.

The service of process claimed to be improper occurred on Sunday, November 21. The address that the private process server went to, 11426 North Cave Creek Road, was the location of appellant's residence and, in a separate building, appellant's business, Worktree Lawn Sprinkler. The diagram admitted into evidence at the hearing shows that the residence was completely surrounded by a fence and was in front of and closer to the public road than the building housing the business. A paved driveway provided an entrance to the parking areas for the residence and the office building. There was one mailbox serving both buildings and, according to appellant, a sign advertising the business located on the property was the only indication of the street number for the residence or business. Between the house and the office building was a fence with a gate, near which was posted a sign designating the private residence as such. Moving away from the road and beyond the fence were some flagstone steps leading to the office building and a pond. The distance between the two buildings was estimated at 35 feet.

The office building was a two-story structure apparently owned by appellant. The second floor contained two offices leased to independent businesses. The first floor housed appellant's lawn sprinkler business and some space leased for a spa business run by another party. The process server went to the office building and encountered the manager of the spa business, Paul Cassata. Cassata called to appellant's residence and spoke with Cheryl Rapton, at that time appellant's fiancee, a part-time employee of Worktree Lawn Sprinkler, and co-inhabitant of appellant's residence. Cassata indicated that someone had arrived to serve some papers on appellant and that the process server indicated that Mrs. Rapton's name was also on these papers. Initially reluctant, Mrs. Rapton decided to walk over to the office to investigate. When she encountered the process server, he refused to show her the papers until she signed for them. When she was asked if she was appellant's wife, Mrs. Rapton said that appellant was not married but that she lived with him. When the server pressed Mrs. Rapton for her last name, she gave it to him and was then served with the papers.

After reading the papers, Mrs. Rapton called appellant's attorney, who indicated that this was improper service and that she and appellant should "disregard the pleadings." When appellant arrived home later the same day, Mrs. Rapton gave him the papers as well as counsel's advice. Appellant read the papers but took no further action.

 The purpose of process is to give the addressee actual notice of the action filed against him and an opportunity to respond. "It is this notice which gives the Court jurisdiction to proceed." *Scott v. G.A.C. Finance Corporation,* 107 Ariz. 304, 305, 486 P.2d 786, 787 (1971). Where the defendant actually receives notice of the action, the requirements of service under Rule 4(d)(1) of the Arizona Rules of Civil Procedure will be liberally construed. *Scott v. G.A.C. Finance Corporation,* supra; see *Nowell v. Nowell,* 384 F.2d 951, 32 A.L.R.3d 107 (5th Cir.1967), cert. den. 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968) (applied to Federal Rules of Civil Procedure 4(d)(1)); *Blackhawk Heating & Plumbing Co., Inc. v. Turner,* 50 F.R.D. 144 (D.Ariz.1970) (applied to Federal Rules of Civil Procedure 4(d)(1)).

 Under the circumstances of this case, we find that appellant was properly served. Substituted service on a person of suitable age and discretion at the addressee's residence includes service on such a person within a reasonable proximity and on the same tract of land as the residence. *Lino v. Hole,* 159 Wash. 16, 291 P. 1079 (1930). Not only was substituted service properly made here, appellant actually received the service on the same day but

chose to ignore it. We distinguish this case from those where the service was effected by leaving the papers at the residence of the defendant but without actually giving the papers to someone, leaving the papers at a business office in close proximity to defendant's residence but not in a suitable person's possession or leaving them with someone at the defendant's business which is not located near defendant's residence. *United States v. N. Tully Semel, Inc.,* 88 F.Supp. 732 (D.Conn.1949) (papers left in business office at opposite end of common hallway from defendant's residence held insufficient); *Clover v. Urban,* 108 Conn. 13, 142 A. 389 (1928) (papers left in common hallway of apartment house used by defendant held insufficient); *Perry v. Perry,* 103 Ga. 706, 30 S.E. 663 (1898) (papers left with son-in-law in son-in-law's drug store which was on floor below defendant's residence held insufficient); *Briscoe v. Getto,* 204 Kan. 254, 462 P.2d 127 (1969) (papers left with defendant's secretary at his place of business held insufficient). We also distinguish *Kibbe v. Benson,* 84 U.S. 624, 21 L.Ed. 741 (1874). In *Kibbe,* the evidence indicated that defendant lived with his father and that the father received the summons and complaint about 125 feet from the residence but within the property boundaries. Upon receiving the papers, the father threw them on the ground. The court determined that the strict requirements of substituted service were intended to insure with some degree of probability that the papers will reach their proper destination. Where the recipient throws the papers on the ground 125 feet from the house, the probability that the defendant will receive them is low. Thus, the court stated its preference for service on or in some part of the house or adjoining structure so that, "if dropped or left, [the papers] would be likely to reach [their] destination." 84 U.S. at 629. We are not confronted here with papers dropped or left at or near the residence but with substituted service on defendant's housemate.

In the present case, appellant's fiancee and housemate walked 35 feet to another structure and admitted to the process server that she lived with appellant. Further, the evidence demonstrates that appellant's business and residence were located at the same address, separated only by a gate and small parking area. We emphasize here that Mrs. Rapton was inside her residence when the server arrived, that she was adequately identified as a resident with appellant in his house before service was effected and that appellant received the papers on the same day they were served. These factors combine to support our finding that service was proper.

■ Appellant next claims that his failure to file an answer was excusable neglect and that the default judgment should be set aside pursuant to Rule 60(c) of the Arizona Rules of Civil Procedure. Appellant contends that he should be excused for the improper legal advice he received from his attorney, arguing that his reliance on counsel's advice was reasonable.

Rule 60(c) of the Arizona Rules of Civil Procedure permits the court to relieve a party from a default judgment. The test for a finding of excusable neglect in Arizona is whether the neglect "is such as might be the act of a reasonably prudent man under the circumstances." *Walker v. Kendig,* 107 Ariz. 510, 512, 489 P.2d 849, 851 (1971); *Coconino Pulp and Paper Co. v. Marvin,* 83 Ariz. 117, 317 P.2d 550 (1957). In addition to a showing of excusable neglect, the party must demonstrate a timely response to the opposing party upon discovery of the neglect and a meritorious defense to the underlying claim. *Moqui, Inc. v. Ambrose and Rosenfield and Co.,* 21 Ariz.App. 565, 521 P.2d 1143 (1974).

■ We acknowledge that the validity of the service of process is a closer question than appears at first blush. We also find appellant's defense that the insurance contract had been terminated by the parties to be meritorious as far as the limited evidence goes. We disagree with appellant's contention, however, that any neglect was excusable.

Advice of counsel in a case such as this is not excusable neglect. The neglect of an attorney is attributed to the client and, unless the attorney's neglect is legally excusable, the client will not be excused. *United Imports and Exports, Inc. v. Superior Court,* 134 Ariz. 43, 653 P.2d 691 (1982).

█ The question here is whether a reasonably prudent attorney would have completely ignored the complaint. We think not. At the very least, counsel ought to have made some objection to service under Rule 12 or filed an answer containing the defense of improper service. To err on the side of nonfeasance in this case was at best risky.

Affirmed.

BIRDSALL, C.J., and HOWARD, J., concur.