729 P.2d 318

Thomas W. BEAL, Plaintiff-Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Intervenor-Appellant.

Thomas W. BEAL, Plaintiff-Appellee,

v.

George Edward IDDINGS and Jane Doe
Iddings, his wife; George E. Iddings
and Marjorie H. Iddings, his wife, De-
fendants-Appellants.

Nos. 1 CA–CIV 8191, 1 CA–CIV 8223.

Court of Appeals of Arizona,
Division 1, Department B.

July 10, 1986.

Harris & Palumbo, P.C. by John David Harris, and Jennings, Kepner & Haug by Jack R. Cunningham, Carolyn M. Kaluzniacki, Phoenix, for plaintiff-appellee.

Ridenour, Swenson, Cleere & Evans by James W. Evans, Michael J. Frazelle, Phoenix, for intervenor-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth and Beshears, P.C. by Scott E. Boehm, Ralph E. Hunsaker, Phoenix, for defendants-appellants Iddings.

JACOBSON, Presiding Judge.

These are consolidated appeals by the defendants in a personal injury action, and their insurer, from a formal order denying their motions to set aside a default and default judgment.

The issues presented for our consideration are: (1) whether the trial court abused its discretion in refusing to vacate the default judgment pursuant to Rule 60(c)(1), Arizona Rules of Civil Procedure, on the ground that defendants Iddings' failure to timely answer plaintiff Thomas Beal's complaint was excusable neglect; (2) whether the trial court abused its discretion in refusing to vacate the default judgment pursuant to Rule 60(c)(6), Arizona Rules of Civil Procedure, on the ground that extraordinary circumstances justified such relief; and (3) whether the trial court abused its discretion in refusing to vacate the de-

fault judgment at the instance of intervenor-appellant, State Farm Mutual Automobile Insurance Company (State Farm), under the doctrine of *East v. Hedges,* 125 Ariz. 188, 608 P.2d 327 (App.1980). We affirm the trial court's ruling as to the Iddings, but reverse the ruling as it applies to State Farm.

The record, viewed in a light most favorable to upholding the decision below, reveals the following pertinent facts. Plaintiffs, Katherine Ann Beal and Thomas W. Beal, filed their complaint against the Iddings on June 1, 1983, alleging George Edward Iddings negligently or recklessly drove across the center line of Tatum Boulevard and collided at high speed with both Katherine Beal's car and Thomas Beal's car. The complaint alleged various injuries to Katherine and Thomas as a result of the two collisions.

At the time of the accident, the Iddings were insured under a State Farm automobile liability insurance policy. State Farm knew about the accident and entered into negotiations with the Beals' counsel. These negotiations resulted in the Beals, the Iddings and State Farm entering into an agreement that settled Katherine Beal's extensive personal injury claims. Pursuant to this settlement, State Farm paid its policy limits of $100,000.00, and the Iddings remained personally liable for the sum of $60,000. Negotiations concerning Thomas Beal's claim, (Thomas had incurred only $388.00 in medical expenses) apparently continued.[1] The Beals' counsel's affidavit stated:

> In approximately mid-March, 1984, undersigned strongly advised State Farm through its adjuster, Wayne McDonnell, that it was obvious a satisfactory settlement could not be reached and that Wayne McDonnell should advise his insureds that the lawsuit would soon be served upon them and to advise Mr. McDonnell when it occurred. Mr. McDonnell stated that he knew his offer

was insufficient and understood undersigned's decision to serve the suit and begin litigation.

McDonnell's affidavit did not discuss this conversation, and stated in pertinent part:

> State Farm knew of the accident involved herein and did correspond with and negotiate with Plaintiffs' counsel on a number of occasions and submitted an offer of settlement to Plaintiffs' counsel on March 27, 1984.

On May 8, 1984, the Beals filed a pleading entitled "Notice of Dismissal of Claim of Plaintiff Katherine Ann Beal." The text of the pleading stated:

> COMES NOW the plaintiff, KATHERINE ANN BEAL, and hereby gives Notice that her claim against the defendants has been settled and compromised and thereby, respectfully requests that this Court dismiss her claim against the defendants. This Notice and Order specifically does not include those claims of Thomas W. Beal against the defendants; said claims remain in litigation.

On May 20, 1984, the Beals served copies of the dismissal notice and the summons and complaint on George E. Iddings at the Iddings' residence. In his affidavit, George E. Iddings stated:

> That on or about May 20, 1984, a process server appeared at my home and left several documents stapled together. The top document was entitled "Notice of Dismissal of Claim of Plaintiff Katherine Ann Beal". Prior thereto and on or about March 17, 1983, our personal attorney, Mr. Jack L. Phelps, had written to Mr. John Harris, attorney for the plaintiffs in the above cause, and worked out a settlement of the case against us. In view of all of this, I looked at the notice of dismissal of claim and felt that the case against us had been concluded and was over and that I need not do anything further with any of the documents served on me, and I felt that the notice of the dismissal of the claim was notify-

---

1. The Iddings' settlement of Katherine's claims also relieved them of any personal liability for Thomas' claims, Thomas agreeing to look only

to State Farm for no more than $100,000 for his injuries.

ing me of the arrangements reached between Mr. Harris and Mr. Phelps.

I called Mr. Phelps and read to him the document entitled Notice of Dismissal of Claim of Plaintiff Katherine Ann Beal, and was told that I didn't need to do anything further and that State Farm would take care of matters. I therefore did not send any of the documents to State Farm Mutual Automobile Insurance Company, nor in any other manner notify them that a process server had come to my home.

On July 19, 1984, the Iddings' default was entered with respect to Thomas Beal's complaint. A civil default hearing was conducted on August 30, 1984. Thomas Beal was present with counsel and testified. The Iddings were neither present nor represented. At the conclusion of the hearing, the trial court entered formal judgment and awarded Thomas Beal $100,000 and costs. State Farm did not learn that the Iddings had been served in this matter until after the default judgment was entered.

On November 1, 1984, State Farm moved to intervene and to set aside the default. The Iddings separately moved to set aside the default on November 2. A formal order denying these motions was entered on January 3, 1985. These appeals followed.[2]

Before addressing the parties' contentions on appeal, we summarize the standard of appellate review applicable to rulings on motions to set aside defaults and default judgments. Our supreme court stated in *United Imports and Exports, Inc. v. Superior Court,* 134 Ariz. 43, 653 P.2d 691 (1982):

> We have consistently held that such motions may be granted in the trial court's discretion when, but only when, the moving party has made an adequate showing of each of the following elements: (1) that it acted promptly in seeking relief from the default judgment, (2) that its failure to file a timely answer

was excusable under one of the six subdivisions of Rule 60(c) ...; and (3) that it had a meritorious defense. *Richas v. Superior Court,* 133 Ariz. 512, 652 P.2d 1035 (1982).

*Id.* at 45, 653 P.2d at 693. *Accord Webb v. Erickson,* 134 Ariz. 182, 655 P.2d 6 (1982); *Addison v. Cienega, Ltd.,* 146 Ariz. 322, 705 P.2d 1373 (App.1985). The trial court's decision whether to set aside a default, based upon these criteria, rests entirely within its discretion and will not be overturned on appeal unless a clear abuse of discretion is evident. *Daou v. Harris,* 139 Ariz. 353, 678 P.2d 934 (1984); *Hirsch v. National Van Lines, Inc.,* 176 Ariz. 304, 666 P.2d 49 (1983); *Richas v. Superior Court,* 133 Ariz. 512, 652 P.2d 1035 (1982). In *Addison,* the court stated:

> ... Because the law favors resolution on the merits, all doubts are to be resolved in favor of the moving party and the trial court is given broad discretion to grant or deny relief. That discretion extends not only to the adequacy of the factual showing but also to the balancing in particular cases of the competing legal principles favoring finality of judgments and resolution on the merits.

146 Ariz. at 323, 705 P.2d at 1374. A proper factual showing is thus a prerequisite to the trial court's exercise of discretion to set aside a default or default judgment. *Richas v. Superior Court, supra.*

### THE IDDINGS' REQUEST FOR RELIEF

The Iddings first contend the trial court abused its discretion in refusing to set aside the default judgment pursuant to Rule 60(c)(1), Arizona Rules of Civil Procedure. They note they had been dealing through their personal attorney and knew a settlement agreement had been reached between their insurance company and the Beals. This settlement eliminated the Iddings' responsibility in the matter, and State Farm was solely responsible for

---

**2.** State Farm's appeal (1 CA–CIV 8191) and the Iddings' appeal (1 CA–CIV 8223) were consolidated by order of this court on April 19, 1985.

Thomas Beal's claims. They assert the notice of dismissal of Katherine Beal's claims further confirmed their understanding that they were no longer involved in the lawsuit. The Iddings' personal attorney also advised them they needed to do nothing further, and that State Farm would take care of any additional matters. Accordingly, they contend their failure to answer Thomas Beal's complaint constituted excusable neglect. While this argument is convincing, in our opinion, the trial court could have concluded excusable neglect was not present.

■ Neglecting to answer a properly served complaint is "excusable" when the neglect or inadvertence is such as might be the act of a reasonably prudent person under similar circumstances, or when it involves a clerical error which might be made by a reasonably prudent person who attempted to handle the matter in a prompt and diligent fashion. *Addison v. Cienega, Ltd., supra.* In the present case, the trial court could reasonably have found George Iddings' conduct with respect to the legal papers served on him fell short of excusable neglect. The trial court could have concluded that a reasonably prudent person who is formally served with legal documents would not merely glance at the one on top and ignore the rest, as Iddings did here.

The Iowa Supreme Court considered an analogous situation in *Haynes v. Ruhoff,* 157 N.W.2d 914 (Iowa 1968). There, an out-of-state defendant was involved in an automobile accident in Iowa. After he returned to his home, Iowa law enforcement officials asked him to appear as a prosecution witness in a criminal proceeding against the other driver involved in the automobile accident. When he later received a subpoena, the defendant sought the advice of an attorney who advised him to resist it if travel expenses were not tendered. Later still, the defendant was served with a summons and complaint in a civil action arising out of the automobile accident and commenced in Iowa by the plaintiff. Believing these documents were

merely another attempt to compel his appearance as a witness in the Iowa criminal proceedings, the defendant ignored them and did not answer. The trial court's decision to set aside his default was subsequently reversed by the appellate court, which stated:

> ... It may be that defendant did show grounds for confusion, but we cannot hold that a lack of understanding as to the legal effect of a notice in a civil action will excuse one from taking affirmative action to obtain an understanding and attempt to appear as required. To permit one to set aside a default when he admits he took no reasonable steps to appear and defend would abrogate completely the rules of civil procedure requiring appearances within a specified time and reward one's neglect or inattention to legal notices properly served upon him.

*Id.* at 918.

■ The Iddings nevertheless argue that their failure to act in response to the service of process on George Iddings was reasonable and prudent, because their personal attorney advised George that nothing further needed to be done. George Iddings' affidavit stated he called his attorney and read him the notice that Katherine Beal's claim had been dismissed. He evidently failed to tell the attorney about the summons and complaint that were served along with it. The trial court could reasonably have found that Iddings' failure to inform his attorney of the summons and complaint was unreasonable, just as his failure to read those documents himself.

The question of following counsel's advice was addressed in *Liberty Mutual Insurance Co. v. Rapton,* 140 Ariz. 60, 680 P.2d 196 (App.1984), where the defaulting defendant's cohabiting fiancee was served with a summons and complaint on the premises of the defendant's business, which was located 35 feet away from their residence on the same parcel of land. After she was served, she called the defendant's attorney, who told her the service had been improper and that the defendant

should disregard the pleadings. After the defendant got home, his fiancee gave him the summons and complaint and relayed his attorney's advice. The defendant read the summons and complaint but took no further action. Division Two of this court upheld the trial court's denial of the defendant's motion to set aside the default judgment. In *Liberty Mutual,* the court indicated:

> Advice of counsel in a case such as this is not excusable neglect. The neglect of an attorney is attributed to the client and, unless the attorney's neglect is legally excusable, the client will not be excused. *United Imports and Exports, Inc. v. Superior Court,* 134 Ariz. 43, 653 P.2d 691 (1982).
>
> The question here is whether a reasonably prudent attorney would have completely ignored the complaint. We think not. At the very least, counsel ought to have made some objection to service under Rule 12 or filed an answer containing the defense of improper service. To err on the side of nonfeasance in this case was at best risky.

*Id.* at 64, 680 P.2d at 200. As in *Liberty Mutual,* the trial court could have determined the Iddings' counsel's actions did not constitute excusable neglect. The text of the dismissal notice, which George Iddings admittedly read to his counsel over the telephone, specifically stated that Thomas Beal's claims were unaffected and "remain[ed] in litigation." Even if Iddings volunteered no information about service of the summons and complaint, the trial court could reasonably have found a prudent attorney would have either asked Iddings whether he had received anything else or instructed Iddings to send him all the documents. The trial court did not abuse its discretion in implicitly finding the Iddings failed to demonstrate excusable neglect within the meaning of Rule 60(c)(1).

 The Iddings argue alternatively that even if no excusable neglect within

Rule 60(c)(1) was shown, the trial court abused its discretion in refusing to set the default judgment aside pursuant to Rule 60(c)(6). Rule 60(c)(6) permits the trial court to relieve a party from a final judgment, order or proceeding for "any other reason justifying relief from the operation of the judgment." In *Webb v. Erickson, supra,* our supreme court interpreted Rule 60(c)(6) to allow trial courts to grant relief from default judgments where the facts go beyond the factors enumerated in clauses (1) through (5) of Rule 60(c) and "raise extraordinary circumstances of hardship or injustice justifying relief...." *Id.* at 187, 655 P.2d at 11. The extraordinary circumstances cited by the *Webb* court did not occur in the instant case. Although the Iddings and their counsel may have been confused about the proceedings, their confusion resulted primarily from carelessness. Further, *Webb* sustained the trial court's decision to vacate a default judgment as being within that court's discretion under the peculiar circumstances involved, and thus does not support the proposition that it is always an abuse of discretion to deny such a motion to vacate under analogous circumstances.[3] Here, the trial court properly exercised its discretion in denying the Iddings' motion to vacate the default judgment. In short, under the circumstances of this case, we cannot find the trial court's presumptive conclusion that no extraordinary circumstances of hardship or injustice existed was a clear abuse of discretion.

## STATE FARM'S REQUEST FOR RELIEF

 We next consider the distinct question whether the trial court abused its discretion in refusing to vacate the default judgment at the instance of appellant State Farm. It is settled in Arizona that an insurer whose insured sustains a default or default judgment has the right to seek

---

**3.** In *Webb* the court stated: "None of the circumstances of this case would have been sufficient to invoke the equitable relief of clause 6. In combination, however, a unique situation was created and we cannot say that the trial court abused its discretion in vacating the default." 134 Ariz. at 189, 655 P.2d at 13.

corresponding relief not only on behalf of its insured, but on its own behalf. *Union Oil Co. v. Hudson Oil Co.*, 131 Ariz. 285, 640 P.2d 847 (1982); *Camacho v. Gardner*, 104 Ariz. 555, 456 P.2d 925 (1969); *Sandoval v. Chenoweth*, 102 Ariz. 241, 428 P.2d 98 (1967). We have previously noted that State Farm acted promptly to seek relief from the judgment. We also note the complete lack of evidence that anyone at State Farm knew the summons and complaint had actually been served on the Iddings before the default judgment was entered. Furthermore, it is undisputed that neither the Beals nor the Iddings informed State Farm of such service. Relying primarily on our decision in *East v. Hedges, supra,* and the decision of Division Two of this court in *Metzger v. Abernathy*, 2 CA–CIV 5311 (Ariz.App. April 26, 1985), State Farm maintains it was entitled to an order setting aside the entry of default and default judgment, and that the trial court's refusal to grant such an order was an abuse of discretion. We agree.

In *Camacho v. Gardner, supra,* our supreme court held the trial court did not abuse its discretion in vacating a default judgment on the motion of the defendant's insurer, where (1) the insured mislaid the summons and complaint and forgot about them until it was too late, (2) the insurer was unaware that the insured had been sued, and (3) the plaintiff's counsel did not inform the insured's counsel as to the summons and complaint served upon the insured until after a default judgment was entered. Thus, in *Camacho*, the insurer was wholly unaware that an action had been brought against its insured, and received no indication that its insured would be or had been served. Similarly, State Farm was unaware the Iddings had been served with a summons and complaint in this matter until approximately five months after the fact. Although, unlike the insurer in *Camacho*, State Farm knew a complaint had been filed and participated in settlement negotiations, it never received notice that the complaint had been served and the time to answer had begun to run. Furthermore, State Farm promptly sought

relief from the entry of default by intervening and moving to set it aside on November 1, 1984.

Our decision in *East v. Hedges, supra,* also concerned an appeal from an order vacating a default judgment against an insured on the motion of the insurer. In *East*, the plaintiff's counsel advised a representative of the insurer that his client would bring suit if the insurer refused to settle the pending claims. No settlement was reached, and the plaintiff filed a complaint, which was served on the insureds. The insureds failed to inform the insurer that they had been served. The plaintiff took judgment by default, and the insurer moved to set the judgment aside. Affirming the trial court's order granting the motion, we stated:

> When an insurer has not had notice of the pendency of a lawsuit against its insured and thus no opportunity to defend on the merits, part 6 of Rule 60(c) [Arizona Rules of Civil Procedure] is a potential avenue of relief. *Camacho v. Gardner*, 104 Ariz. at 560, 456 P.2d 925. As a non-party with standing, the insurer enters the litigation without having received notice of the proceedings otherwise provided to a party by service of process. It, therefore, does not have legal notice of a default judgment entered against its insured unless it received this information by other means. The lack of notice is a reason, beyond those set forth in the first five parts of rule 60(c), for the trial court to exercise its discretion and set the default judgment aside. Such is the situation here.

125 Ariz. at 189, 608 P.2d at 328.

We now hold that, under Rule 60(c), it was an abuse of the trial court's discretion to deny State Farm's motion to set aside the default, because the Iddings failed to notify State Farm that service of process was complete. State Farm had no means to discover this fact, other than continuously and frequently contacting the Iddings and inquiring whether service had been effected. To hold insurers to this standard would be to burden them unjustifiably

while relieving insureds of all similar responsibility in this context. We accordingly decline to do so.

■ As previously discussed, the Iddings failed to exercise due diligence for purposes of protecting their interests. Their lack of due diligence also operated to prejudice the interests of State Farm. The extreme remedy of a default judgment, which resulted from the Iddings' omissions, cannot fairly be directed against State Farm under these circumstances. *See Union Oil Co. v. Hudson Oil Co., supra; Phoenix Airport Travelodge v. Dolgin*, 12 Ariz. App. 358, 470 P.2d 506 (1970).

■ As in *Camacho, Union Oil Co.,* and *Dolgin,* State Farm was deprived of the opportunity to defend the instant lawsuit through no fault of its own. *See Metzger v. Abernathy, supra.* In *Metzger,* Division Two of this court ruled the trial court had not abused its discretion in setting aside a default judgment where the insurer was fully aware of the pending lawsuit, but was never notified when the insured received service of process. The only fact distinguishing *Metzger* from the present case is that here, the Beals' attorney informed a State Farm representative that the Iddings would be served at some point in the future. This minor distinction is, in our opinion, not material to our consideration of the issues on appeal. Counsel for the Beals communicated to a State Farm representative, in mid-March, 1984, that the Iddings would soon be served. Service was not actually made until two months later, on May 20, 1984. We will not interpret the Beals' counsel's vague remark about serving process in the future as providing State Farm with notice sufficient to support the default judgment below.

## WHETHER STATE FARM RAISED A MERITORIOUS DEFENSE

■ Finally, we examine whether State Farm satisfied the "meritorious defense" requirement for setting aside an entry of default and default judgment. To successfully allege a meritorious defense, a party must assert material facts which, if proven at trial, would constitute a substantial defense. *Richas v. Superior Court, supra; United Imports & Exports, Inc. v. Superior Court, supra.*

■ While conceding it has no defense to the negligence of its insured, State Farm asserted a defense to Thomas Beal's claim for negligent infliction of emotional distress, stating:

> The nature and extent of the injuries and damages to the plaintiff and the existence or nonexistence of the manifestation of physical injury as a result of mental anguish or upset are all debatable issues in this case and could serve as meritorious defenses if a trial on the issue of damages was allowed to be properly litigated as opposed to being disposed of by way of default procedures.

We find this statement adequately alleges a substantial defense by disputing the existence of Thomas Beal's physical injuries, which purportedly arose from his mental distress. We also note the amount of Thomas Beal's medical expenses, $388, contrasts so sharply with the actual award of State Farm's $100,000 policy limits that this discrepancy alone calls into question the validity of the damage award.

In view of our conclusion that State Farm has met all three requirements justifying relief from entry of default and the default judgment below, we need not address other issues raised by State Farm regarding the proper amount of damages.

In our opinion, the trial court abused its discretion in refusing to set aside its judgment in this matter at the instance of State Farm. Accordingly, the entry of default is vacated, the judgment reversed with respect to State Farm and the matter remanded for further proceedings consistent with this opinion. We otherwise affirm the judgment regarding the Iddings.

CONTRERAS, J., concurs.

CORCORAN, Judge, concurring in part, dissenting in part:

I agree with the majority that the default and judgment entered against State Farm should be reversed.

However, I disagree with the majority and conclude that the default and judgment entered against the Iddings must also be reversed. The majority finds the argument made by the Iddings to be "convincing"; I find it compelling. The application of the principle relating to "abuse of discretion" in this case by the majority leads to the pixilated result that under the undisputed facts in this case, the Iddings either have the opportunity to defend the damage claim by Beal *or* have to pay him $100,000, simply on the basis of a flip of the coin by the trial court.

The majority misapplies "abuse of discretion" in this case. The facts and inferences from the facts are not in dispute. I don't believe there are any factual or equitable considerations in dispute. Of the procedural considerations which overlap, the application of those which preponderate in favor of setting aside the default and judgment against the Iddings should be given primary consideration. Since the trial court did not do that, this court should. *See State v. Chapple,* 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983). In this kind of case, to do otherwise is simply to permit the ultimate result to be forever determined by whomever makes the first decision. This ragged line cannot be justified by saying there *was no* "abuse of discretion" in denying the Iddings' motion to set aside the default and judgment, and that it *was* an "abuse of discretion" to deny State Farm's similar motion.

The facts set forth by the majority justify the conclusion that there was an abuse of discretion in the denial of the motions to set aside the defaults and judgments against *both* State Farm and Iddings. I would reverse as to Iddings and State Farm and remand for trial.