IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

DEC 20 2005

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| STEVEN A. MAHER, a married man dealing in his sole and separate property, | ) ) ) | 2 CA-CV 2005-0039 DEPARTMENT B |
| Plaintiff/Appellant, | ) ) | O P I N I O N |
| v. | ) ) | |
| MICHAEL URMAN and JANE DOE URMAN, husband and wife; LISA SMITH and JOHN DOE SMITH, wife and husband; and DECONCINI, MCDONALD, YETWIN & LACY, P.C., an Arizona professional corporation, | ) ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20043293

Honorable Deborah Bernini, Judge

AFFIRMED

David Lipartito                                                                                            Tucson
                                                                          Attorney for Plaintiff/Appellant

Fennemore Craig
  By Andrew M. Federhar and Theresa Dwyer                                               Phoenix
                                                                   Attorneys for Defendants/Appellees

P E L A N D E R, Chief Judge.

**¶1** Appellant Steven Maher appeals from the trial court's dismissal of his complaint without prejudice for failure to timely serve the defendants/appellees and from the court's denial of his motions for relief pursuant to Rule 60(c), Ariz. R. Civ. P., 16 A.R.S., Pt. 2, and A.R.S. § 12-504, Arizona's savings statute. Finding no error, we affirm.

## BACKGROUND

**¶2** On June 22, 2004, Maher filed a complaint against appellees, his former attorneys—Michael Urman, Lisa Smith, and the law firm of DeConcini, McDonald, Yetwin & Lacy, P.C. In his complaint, Maher alleged those attorneys had negligently represented him in a securities matter and had breached the contract of representation. Maher alleged the parties had entered into the contract "[i]n or about April, 2001," but further asserted he did not, and could not, discover his claims until he received his file from the attorneys on June 25, 2002.

**¶3** The parties agree that a summons was issued on June 22, 2004, the same day Maher filed the action. But, he had failed to serve any of the defendants by September 24, 2004, when the trial court's calender services department issued a notice of impending dismissal. The notice informed Maher that his action would be dismissed without prejudice "30 days from [its] date . . . unless good cause is shown why service was not made within the time limits established by Rule 4, Rules of Civil Procedure." On October 22, Maher

2

attempted to file a request to extend his time to serve the defendants.[1] The trial court denied Maher's request on October 25, finding "no sufficient good legal cause provided."

**¶4** Defendants were then served with the summons and complaint on October 29, nine days after the time limit prescribed in Rule 4(i), Ariz. R. Civ. P., 16 A.R.S., Pt. 1, and thirty-five days after the notice of impending dismissal. On November 17, defendants moved for an "order dismissing [Maher's] complaint for failure to serve the summons and complaint in a timely fashion." In his response and supplemental response, Maher claimed he had demonstrated "good cause" or at least "extenuating circumstances" to extend the time for service and, alternatively, relief should be granted pursuant to either Rule 60(c), Ariz. R. Civ. P., or § 12-504. The trial court granted defendants' motion to dismiss and denied Maher's alternate requests for relief. This appeal followed.

## DISCUSSION

### I. Dismissal for untimely service

**¶5** In a two-pronged argument, Maher first contends the trial court erred in dismissing his complaint for untimely service. Specifically, he asserts the trial court (1) misinterpreted Rule 4(i), Ariz. R. Civ. P., and (2) abused its discretion by finding he had

---

[1] The expanded record on appeal reflects, and appellees do not dispute, that Maher attempted to file his motion for extension of time to serve summons and complaint on October 22, 2004, but for some reason the trial court apparently struck and denied the motion on October 25 without actually filing it.

not shown "good cause," or by failing to find "extenuating circumstances," to extend the time for service.

¶6    The first prong of Maher's argument raises a legal issue subject to our de novo review. *See Vega v. Sullivan*, 199 Ariz. 504, ¶ 8, 19 P.3d 645, 648 (App. 2001) (we review de novo questions involving interpretation and application of court rules). Maher claims the trial court incorrectly interpreted Rule 4(i) as requiring a showing of good cause before it could extend the time for service even though the rule provided the court with "the option of setting a time for service (even absent a showing of good cause) rather than dismissing outright." We agree with Maher's interpretation of the rule but disagree with his conclusion that the trial court clearly misinterpreted it.

¶7    As amended in 1996, Rule 4(i) states in pertinent part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Maher asserts the rule allows a trial court to extend the time for service without a showing of good cause but separately mandates an extension if good cause is shown. He argues the trial court denied his request for an extension of time because "[it] was unaware [it] had discretion under the rule to set a period for service instead of dismissing without prejudice. . . . [It] seemed to believe that it had no choice but to dismiss." Conversely,

4

appellees argue the rule permits a trial court to extend the time for service beyond 120 days if, and only if, good cause is shown.

**¶8**    As noted above, Rule 4(i) was amended in 1996.  Before that amendment, the rule unambiguously required a showing of good cause in order to extend the time for service, stating "[i]f service . . . is not made upon the defendant within 120 days after the filing of the complaint and the party on whose behalf . . . service was required cannot show good cause why such service was not made . . . the action shall be dismissed."  *See* 186 Ariz. LI (order amending Rule 4, effective December 1, 1996).  As amended, however, the rule authorizes a court to "direct that service be effected within a specified time," apparently with or without a predicate showing of good cause.

**¶9**    In *Toy v. Katz*, 192 Ariz. 73, 82 n.1, 961 P.2d 1021, 1030 n.1 (App. 1997), Division One of this court stated in dicta the 1996 amendment did "not affect [the rule's] substance."  But we question that dicta in view of the amended language of the rule itself and the amendment's purpose, which was "to bring various provisions in the Arizona Rules of Civil Procedure into greater conformity with their counterparts in the Federal Rules of Civil Procedure, as the latter had been amended in 1993."  Daniel J. McAuliffe, *Arizona Civil Rules Handbook* 36 (2005 ed.)  Rule 4(m), Fed. R. Civ. P., is identical to Arizona's Rule 4(i).  Before the federal rule was amended in 1993, its language was identical to Arizona's pre-1996 rule.  *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1304 (3rd Cir. 1995) (citing Fed. R. Civ. P. 4(j), the prior version of Fed. R. Civ. P. 4(m)).

Federal courts interpreting the amended rule have recognized that the amendment effected a substantive change. *See Henderson v. United States*, 517 U.S. 654, 662-63, 116 S. Ct. 1638, 1643, 134 L. Ed. 2d 880, 889-90 (1996) (1993 amendments accorded courts discretion to extend 120-day period even when no good cause shown); *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1131-32 (11th Cir. 2005) (noting that "[p]rior to the amendments of 1993, the federal rules required a district court to dismiss an untimely served complaint absent a showing of good cause," but that "a majority of . . . circuits . . . have held that the 1993 amendment permits a district court to exercise discretion under Rule 4 to extend the time for service of process, even where the plaintiff has not shown good cause for his failure").

¶10        In addition, several federal cases support Maher's position:  the language of Rule 4(i), Ariz. R. Civ. P., allows a trial court to extend the time for service, even absent a showing of good cause. *See Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996) ("where good cause is shown, the court has no choice but to extend the time for service . . . [i]f, however, good cause does not exist, the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time"); *Espinoza v. United States*, 52 F.3d 838, 840-41 (10th Cir. 1995) ("The plain language of Rule 4(m) . . . broadens the [trial] court's discretion by allowing it to extend the time for service even when the plaintiff has not shown good cause."). These cases are particularly compelling in light of the fact that the federal rule was amended to its current

6

version in 1993, and Arizona's 1996 rule change mirrors the federal change. *See Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 462, 799 P.2d 801, 803 (1990) ("Whenever feasible our courts have looked to the origin and interpretation of federal counterparts for guidance in construing the Arizona rules."); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 304, 802 P.2d 1000, 1003 (1990) ("uniformity in interpretation of our rules and the federal rules is highly desirable"). In short, we reject appellees' assertion that current Rule 4(i) "makes it clear that the court 'shall' dismiss the action unless the 'plaintiff shows good cause for the failure.'"[2]

¶11 Nonetheless, based on the record before us, we cannot conclude the trial court was unaware of or disregarded its discretion under Rule 4(i) as amended. In support of an opposite conclusion, Maher points to the hearing on appellees' motion to dismiss for untimely service, at which the court stated: "I don't have good cause to grant anything other than defense counsel's request that this matter be dismissed for failure to timely serve." Maher argues that statement implicitly shows the court was unaware that, in its discretion,

---

[2]At oral argument in this court, appellees retreated from that assertion and accepted our interpretation of Rule 4(i) in a manner consistent with the federal courts' interpretation of federal Rule 4(m).

7

it could extend the time for service under Rule 4(i), even absent a showing of good cause.[3] We disagree.

**¶12** In neither his multiple responses to appellees' motion to dismiss nor his oral argument on the motion did Maher mention, let alone emphasize, the 1996 rule change or its effect. Rather, he merely argued that good cause or extenuating circumstances existed for his delay in service, not that the court had discretion to extend the time for service even without a showing or finding of either.[4] Because he did not specifically raise the implications of the rule as amended, the trial court neither addressed nor rejected Maher's current argument. Under the circumstances, we cannot conclude the court failed to understand the discretionary component of Rule 4(i) or otherwise misinterpreted the rule.

---

[3]At oral argument, Maher contended for the first time that the trial court's order denying his motion for extension of time for service also manifests the court's misunderstanding of Rule 4(i), as amended. Although the court's finding in that order of "no sufficient good legal cause" is confusing or ambiguous, it does not conclusively support Maher's new argument, even had it been timely made. *See Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004) ("Generally, issues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived.").

[4]Although Maher referred below to "discretionary deadlines" that the trial court could extend "in [its] discretion," Maher merely suggested the time for service could be expanded for two reasons: good cause or extenuating circumstances, as articulated in *Toy v. Katz*, 192 Ariz. 73, 961 P.2d 1021 (App. 1997). As noted earlier, the court in *Katz* did not recognize a substantive change to Rule 4(i), and therefore Maher's reference to that case would not have alerted the trial court to the argument he now makes based on the 1996 amendment to the rule. *See id.* at 82 n.1, 961 P.2d at 1030 n.1. We also note that, from a practical standpoint, a trial court probably will not extend the time for service absent some reasonable explanation or showing of good cause, even though the current rule theoretically provides discretion to do so.

**¶13** To the extent Maher relies on the 1996 amendment to Rule 4(i) to now argue the trial court had, and should have exercised, a standardless discretion to extend the time for service for any or no reason, he waived the argument by failing to present it below. *See Orfaly v. Tucson Symphony Society*, 209 Ariz. 260, ¶ 15, 99 P.3d 1030, 1035 (App. 2004) (arguments not raised in trial court waived). With respect to the "good cause" and "extenuating circumstances" arguments Maher actually made below, we may infer that the trial court "consider[ed] . . . and rejected [those] arguments" when it granted the motion to dismiss and denied the relief he requested. *Jepson v. New*, 164 Ariz. 265, 274, 792 P.2d 728, 737 (1990). In addition, "the trial court is presumed to know and follow the law," *State v. Ramirez*, 178 Ariz. 116, 128, 871 P.2d 237, 249 (1994), and Maher has not overcome that presumption here.

**¶14** We turn now to the second prong of Maher's argument: the trial court "abused its discretion by finding that the multiple, undisputed reasons advanced by [him] did not constitute 'good cause' for an extension of time or at least 'extenuating circumstances' within the meaning of *Toy v. Katz*." Under both the pre- and post-amendment version of Rule 4(i) and its federal counterpart, good cause mandates an extension of the time for service. *See Panaras*, 94 F.3d at 340. In order to show good cause to extend time for service, a plaintiff must demonstrate he or she exercised due diligence in trying to serve the defendant. *See Snow v. Steele*, 121 Ariz. 82, 83, 588 P.2d 824, 825 (1979) (discussing then Ariz. R. Civ. P. 6(f), the predecessor of Rule 4(i)).

9

¶15 Whether a party has exercised due diligence in obtaining service of process, and therefore shown good cause for his or her failure to timely serve, is a question of fact that is left to a trial court's sound discretion. *See Taylor v. Superior Court*, 13 Ariz. App. 52, 55, 474 P.2d 59, 62 (1970). "To test whether a trial court has abused its discretion, we must determine not whether we might have so acted under the circumstances, but whether the lower court exceeded the bounds of reason by performing the challenged act." *Katz*, 192 Ariz. at 83, 961 P.2d at 1031. "It is well established law in Arizona that appellate courts will not disturb the exercise of discretion of the trial court if it is supported by any reasonable evidence." *Peters v. M & O Constr., Inc.*, 119 Ariz. 34, 36, 579 P.2d 72, 74 (App. 1978).

¶16 Maher argues good cause existed because "he was an unrepresented layperson, untrained in the law; that he was facing a medical situation requiring surgery; and that he was tied up in other complex litigation." He also asserts he delayed service "because he thought that a federal governmental investigation into the subject matter of his [c]omplaint might make further litigation unnecessary or was necessary to the success of [t]his litigation." And, he argues, "he had relied on a Notice of Impending Dismissal from the trial court stating he had thirty days, to October 25, 2005, to serve his summons and complaint, and had filed, within that time, a motion for extension of time."

¶17 Appellees, on the other hand, argue good cause did not exist because Maher took no specific action to serve them, despite the fact that their whereabouts were public and

10

known by Maher. They further argue Maher "made no showing of a physical, medical or financial condition that prevented him from hiring a process server or effecting service upon [the attorneys] by mail." Appellees also point out that, despite Maher's explanations for his not having timely effected service, he was able to draft and file a motion to extend time by October 22, 2004, just two days after the 120 days afforded by Rule 4(i) had elapsed.

¶18        In a number of Arizona cases, courts have found no good cause under circumstances arguably more compelling or sympathetic than those presented here. *See, e.g., Grobe v. McBryde*, 105 Ariz. 577, 579-81, 468 P.2d 936, 938-40 (1970) (change of attorney did not constitute good cause where plaintiffs had claimed they were diligently pursuing discovery and where dismissal would bar their claims because of statute of limitations); *Riley v. Superior Court*, 116 Ariz. 89, 91, 567 P.2d 1218, 1220 (App. 1977) (no good cause despite defendants having been aware of potential lawsuit and plaintiffs having made unsuccessful attempts to serve defendants, who resided in China); *Safeway Stores, Inc. v. Superior Court*, 19 Ariz. App. 210, 214, 505 P.2d 1383, 1387 (1973) (plaintiff's excuses of illness and bankruptcy did not constitute good cause); *Van Campen v. The Upjohn Co.*, 19 Ariz. App. 81, 82-83, 504 P.2d 1304, 1305-06 (1973) (trial court did not abuse its discretion in failing to find good cause where service was made four days after the one-year time period); *see also Cook v. Superior Court*, 135 Ariz. 1, 2, 658 P.2d 801, 802 (1983) (change of attorney did not constitute good cause where plaintiff's prior attorney had failed to amend complaint to name proper defendants nearly ten months after

11

ascertaining their identity); *Peters*, 119 Ariz. at 36, 579 P.2d at 74 (trial court did not abuse its discretion in denying extension of time where defendants had not prevented service, even though effect of dismissal was prejudicial because statute of limitations had run).

¶19    In light of those decisions and the record here, we cannot say the trial court abused its discretion in determining good cause did not exist. Maher gave several reasons for his failure to timely serve appellees, but he failed to demonstrate affirmative steps he had taken that might tend to show due diligence. Although he attempted to extend the time for service on or about October 22, 2004, that date was still outside the time permitted under Rule 4(i). And we agree with the trial court that calendar services's notice of impending dismissal, which the court aptly described as a "courtesy" notice, did not extend Maher's time for service.[5] In addition, that Maher was unrepresented until December 20, 2004, does not afford him more leniency under the rules. *See Homecraft Corp. v. Fimbres*, 119 Ariz. 299, 301, 580 P.2d 760, 762 (App. 1978) ("When one undertakes to represent himself he is entitled to no more consideration than if he had been represented by counsel."). The trial court's determination that Maher failed to show good cause was well within its discretion.

¶20    Finally, Maher presents an overarching argument that "[t]here is a presumption in favor of resolving cases on their merits, . . . [and t]his policy should apply with particular strength where dismissal of the case, even without prejudice, will result in a permanent loss

---

[5]Contrary to Maher's assertion, the notice of impending dismissal did not "stat[e] he had thirty days, to October 25, 200[4], to serve his summons and complaint."

12

of the claimant's right to a decision on the merits due to the running of a statute of limitations."[6]  But the Arizona cases make clear that a trial court does not abuse its discretion in refusing to extend the time for service even when a newly filed claim would be time-barred.  *See Grobe*, 105 Ariz. at 579-81, 468 P.2d at 938-40; *Peters*, 119 Ariz. at 36, 579 P.2d at 74.  Absent an abuse of discretion, the trial court's ruling must stand.[7]

## II.   Rule 60(c)

¶21     Maher next argues that "[t]he trial court erred or abused its discretion by denying [his] motion for relief under . . . Rule 60(c)[, Ariz. R. Civ. P., 16 A.R.S., Pt. 2]."  He contends his failure to serve "was at worst excusable neglect" under Rule 60(c)(1).  We review a trial court's ruling on a motion for relief from judgment under Rule 60(c) for an abuse of discretion.  *Johnson v. Elson*, 192 Ariz. 486, 488, 967 P.2d 1022, 1024 (App. 1998); *Copeland v. Ariz. Veterans Mem'l Coliseum*, 176 Ariz. 86, 89, 859 P.2d 196, 199 (App. 1993).  "The purpose of the rule is to provide relief for those mistakes and errors

---

[6]Because Maher claimed he had discovered the alleged malpractice on June 25, 2002, the two-year limitations period elapsed, at the latest, on June 25, 2004.  *See* A.R.S. § 12-542; *Walk v. Ring*, 202 Ariz. 310, 44 P.3d 990 (2002).

[7]Maher also argues the trial court erred by not finding "at least 'extenuating circumstances' within the meaning of *Toy v. Katz*."  But the "extenuating circumstances" discussed there involved the plaintiffs' reliance on explicit orders from the court allowing them additional time in which to serve their complaint.  *See Katz*, 192 Ariz. at 81-82, 961 P.2d at 1029-30.  Although Maher contends the notice of impending dismissal caused similar reliance, a generic, form notice from the court does not present the type of extenuating circumstance created by an affirmative court order.  Further, because *Katz* analyzed the language of former Rule 4(i), which unambiguously required a showing of good cause before a trial court could extend the time for service, it is not clear "extenuating circumstance" analysis remains necessary or appropriate.

which inevitably occur despite diligent efforts to comply with the rules." *City of Phoenix v. Geyler*, 144 Ariz. 323, 332, 697 P.2d 1073, 1082 (1985). To obtain relief under Rule 60(c)(1), a party must "show (1) mistake, inadvertence, surprise or excusable neglect; (2) that relief was sought promptly; and (3) that a meritorious claim existed." *Copeland*, 176 Ariz. at 89, 859 P.2d at 199.

¶22 "Neglect is excusable if it 'might be the act of a reasonably prudent person under the same circumstances.'" *Jarostchuk v. Aricol Commc's, Inc.*, 189 Ariz. 346, 348, 942 P.2d 1178, 1180 (App. 1997), *quoting Geyler*, 144 Ariz. at 331, 697 P.2d at 1081. In *Jarostchuk*, Division One of this court held that a secretary's failure to understand a timing rule did not amount to excusable neglect because the "error was neither inadvertent nor clerical; it was intentional action on a matter requiring some legal competence." 189 Ariz. at 349, 942 P.2d at 1181. Similarly, Maher's failure to timely serve appellees was not the result of a clerical error, but was based either on his ignorance of Rule 4(i), *see Beal v. State Farm Mutual Automobile Insurance Co.*, 151 Ariz. 514, 518, 729 P.2d 318, 322 (App. 1986) (finding trial court was within its discretion in determining a reasonable party would affirmatively act upon receiving a notice from the court, even if they did not completely understand it), or a strategic attempt to delay service.

¶23 The trial court might have concluded that, whatever Maher's reason, his ability to draft and file a motion to extend time, when he could have simply served appellees within that same time frame, evidenced a desire to delay service. The court similarly could have

concluded that Maher's failure to timely serve appellees despite warning from the court was not an inadvertent mistake, but rather an intentional choice. That Maher was unrepresented did not excuse him from his burden to diligently adhere to the court's rules. *See Homecraft Corp.*, 119 Ariz. at 301, 580 P.2d at 762. Because Maher failed to establish excusable neglect, the trial court did not abuse its discretion in refusing to grant relief pursuant to Rule 60(c).

¶24 Maher also contends the "[i]ssuance of a misleading [n]otice by the trial court, combined with the other circumstances [he] cited . . . constitutes [sic] 'extraordinary circumstances' requiring relief under Rule 60(c)(6)." As appellees point out, however, Maher did not present this argument below, but rather solely requested "relief under Rule 60(c) for excusable neglect." *See Webb v. Erickson*, 134 Ariz. 182, 186, 655 P.2d 6, 10 (1982) ("the reason for setting aside the [judgment or order under subsection (6)] must not be one of the reasons set forth in the five preceding clauses"). Maher waived this argument by failing to make it below and, therefore, we do not address it. *See Miller v. Hehlen*, 209 Ariz. 462, ¶ 21, 104 P.3d 193, 200 (App. 2005).

### III.  A.R.S. § 12-504

¶25 Maher lastly argues the "trial court erred or abused its discretion by refusing [him] permission to refile the [c]omplaint under the savings statute." We review a trial court's grant or denial of relief under § 12-504 for an abuse of discretion. *Jepson v. New*, 164 Ariz. 265, 274, 792 P.2d 728, 737 (1990); *Copeland*, 176 Ariz. at 91, 859 P.2d at 201.

15

We "will not disturb the exercise of the trial court's discretion if it is supported by any reasonable evidence." *Schwartz v. Ariz. Primary Care Physicians*, 192 Ariz. 290, 295-96, 964 P.2d 491, 496-97 (App. 1998).

¶26     Section 12-504(A) provides, in pertinent part, that "[i]f an action timely commenced is terminated by abatement, . . . the court in its discretion may provide a period for commencement of a new action for the same cause, although the time otherwise limited for commencement has expired." In *Jepson*, our supreme court articulated a set of factors a trial court must consider in determining whether to permit relief under that statute. Those factors include "'*whether the plaintiff acted reasonably and in good faith, whether he prosecuted his case diligently and vigorously, whether a procedural impediment exists which affects his ability to file a second action, and whether either party will be substantially prejudiced.*'" *Jepson*, 164 Ariz. at 272, 792 P.2d at 735, *quoting Flynn v. Cornoyer-Hedrick Architects & Planners, Inc.*, 160 Ariz. 187, 192, 772 P.2d 10, 15 (App. 1988) (emphasis added in *Jepson*). "'*The burden is on the plaintiff to present the particular circumstances that justify relief under § 12-504.*'" *Id.*, *quoting Flynn*, 160 Ariz. at 192, 772 P.2d at 15 (emphasis added in *Jepson*).

¶27     Further, "[t]o obtain relief under the savings statute where the action has abated and been terminated, the plaintiff must show that despite diligent efforts, he was unable to effect service." *Id.* at 273, 792 P.2d at 736. Appellees argue, and we agree, Maher "cannot establish that he vigorously prosecuted his case[; n]or can he demonstrate

16

. . . diligent efforts to effect service on [them] within 120 days of filing his complaint." *See Perry v. County of Maricopa*, 167 Ariz. 458, 461, 808 P.2d 343, 346 (App. 1991) (trial court did not abuse its discretion in denying relief under § 12-504(A) when defendant, a government agency, was not difficult to find and plaintiff had made no effort to serve until ten days before her time elapsed, even when plaintiff's action was otherwise time-barred).

¶28 As appellees point out, Maher established he was capable of properly effecting service when he promptly served them upon learning the trial court had denied his motion to extend the time for service. Additionally, our determination that the trial court did not abuse its discretion in failing to find Maher had established good cause pursuant to Rule 4(i) logically compels the same conclusion that Maher failed to demonstrate due diligence for purposes of § 12-504. Because relief under the savings statute requires a showing of diligent efforts when an action is abated, we cannot say the trial court abused its "broad discretion" in denying statutory relief. *Jepson*, 164 Ariz. at 274, 792 P.2d at 737.

## DISPOSITION

¶29 The orders dismissing Maher's complaint and denying Maher relief are affirmed. In our discretion, we deny appellees' request for an award of attorney fees on appeal, made pursuant to A.R.S. § 12-341.01.

_____
JOHN PELANDER, Chief Judge

CONCURRING:

17

_____
PHILIP G. ESPINOSA, Presiding Judge


_____
JOSEPH W. HOWARD, Judge