NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FREDERIC J. BUONINCONTRI, et al., *Plaintiffs/Appellants*,

*v.*

ORHUB, INC., et al., *Defendants/Appellees*.

No. 1 CA-CV 22-0332
FILED 2-28-2023

Appeal from the Superior Court in Maricopa County
No. CV2018-013105
The Honorable Roger E. Brodman, Judge, *Retired*
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Amy D. Sells, Christopher R. Kaup
*Counsel for Plaintiffs/Appellants*

Righi Fitch Law Group, P.L.L.C., Phoenix
By Elizabeth S. Fitch, Benjamin L. Hodgson
*Counsel for Defendants/Appellees John L. Condrey, Kira N. Barrett, and Gordon Rees Scully Mansukhani, LLP*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James B. Morse Jr. joined.

---

**K I L E Y**, Judge:

**¶1**　　　　Frederic Buonincontri and AXT Analytics, LLC ("AXT") appeal from the superior court's order denying their request for the imposition of sanctions on counsel for defendant ORHub, Inc. ("ORHub") pursuant to Arizona Rule of Civil Procedure ("Rule") 11 and A.R.S. § 12-349. Finding no abuse of discretion, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**　　　　ORHub issued approximately $5 million in convertible notes to over 70 noteholders pursuant to a note agreement that sets forth the respective obligations and rights of ORHub and the noteholders. As relevant here, Section 4.2 of the Note Agreement ("Section 4.2") requires ORHub to keep financial records in accordance with generally accepted accounting principles ("GAAP") and to provide to the noteholders, on a quarterly and annual basis, GAAP-compliant financial statements that are certified by ORHub as true, correct, and complete. Section 7 of the Note Agreement provides for a note agent to represent the interests of the noteholders. Although the Note Agreement designates ORHub as the initial Note Agent, Section 7.5 of the Note Agreement provides for the replacement of the Note Agent by vote of the noteholders or by court order.

**¶3**　　　　Section 3.8 of the Note Agreement ("Section 3.8") provides for the mandatory conversion of the notes to ORHub stock if the stock price reaches a specified level for ten consecutive days.

**¶4**　　　　Buonincontri, an ORHub noteholder, filed suit against ORHub in October 2018, alleging that ORHub was in default of various provisions of the Note Agreement and seeking its replacement as Note Agent. AXT later joined the case as a plaintiff. After further litigation, Buonincontri and AXT applied for injunctive relief to remove ORHub as Note Agent and appoint AXT in its place.

**¶5**　　　　Following an evidentiary hearing, the superior court issued a ruling on May 16, 2019 (the "May 2019 Order") granting the plaintiffs'

request for preliminary injunctive relief. Determining that ORHub "was failing financially" due to its "poor financial controls" and management's "excessive personal spending" from company accounts, the superior court removed ORHub as Note Agent and appointed AXT in its place. The superior court further ordered ORHub to provide AXT with "current financial information as required in the Note Agreement."

¶6        Several days later, ORHub's chief financial officer, Barney Monte, sent Buonincontri an email with attachments identified as ORHub's "most recent financial statements." In his email, Monte informed Buonincontri that ORHub would provide further financial information only pursuant to a non-disclosure agreement ("NDA") supplied by ORHub.

¶7        Monte's email led to a dispute between the parties over whether the financial information Monte provided on ORHub's behalf was GAAP-compliant and certified in the manner required by Section 4.2. The parties further disputed whether ORHub's insistence that AXT sign an NDA prior to the disclosure of further financial information violated the May 2019 Order, which, by its terms, required ORHub to disclose financial information to AXT without condition.

¶8        Buonincontri and AXT then moved for the imposition of sanctions against ORHub pursuant to Rule 65(f), asserting that ORHub had violated the May 2019 Order in various respects, including by failing to provide certified, GAAP-compliant financial information as required by Section 4.2 and by belatedly insisting that Buonincontri sign an NDA before ORHub would disclose additional financial information. ORHub responded that sanctions were not warranted because it had "done everything in its power to comply with" the May 2019 Order.

¶9        Shortly thereafter, ORHub filed a notice with the superior court stating that, as a result of the recent sale of ORHub stock to an investor (whom ORHub did not identify), the stock's trading price reached the level that triggered the mandatory conversion provisions of Section 3.8. ORHub took the position that the mandatory conversion of all ORHub notes to company stock eliminated the need for a note agent, rendering moot the plaintiffs' efforts to replace ORHub with AXT as Note Agent.

¶10        Buonincontri and AXT then applied for injunctive relief to block ORHub's efforts to implement the mandatory conversion of the ORHub notes. ORHub, in turn, moved for summary judgment on grounds

of mootness on the plaintiffs' claim for the appointment of AXT as Note Agent.

¶11 The superior court held an evidentiary hearing on November 21, 2019, on the pending motions and requests for relief.

¶12 Roughly a month before the evidentiary hearing, the plaintiffs, through counsel, emailed ORHub's counsel asking to schedule a consultation pursuant to Rule 11(c)(2) to discuss unspecified "actions of your client and your own actions, including statements to the court, which we believe violate Rule 11." After ORHub's counsel requested clarification, the plaintiffs sent ORHub's counsel a letter on November 19 (the "Rule 11(c)(2) Notice") detailing what they described as "serious Rule 11(b) violations by you and your firm." The alleged violations identified in the Rule 11(c)(2) Notice include, *inter alia*, ORHub's counsel's representations that the financial information Monte supplied in response to the May 2019 Order was GAAP-compliant and certified in the manner required by Section 4.2 and counsel's purportedly inaccurate characterization, in court filings, of the parties' respective positions regarding the NDA. The Rule 11(c)(2) Notice also alleged that ORHub's counsel had failed to disclose the fact that the unidentified investor whose purchase of ORHub stock had purportedly triggered the mandatory conversion of the notes to equity was an entity controlled by Christopher Wiggins, an ORHub investor aligned with ORHub's leadership. According to the plaintiffs, the failure to disclose Wiggins's role in the underlying transaction created the "false impression" that the mandatory conversion was triggered by an arm's-length transaction between ORHub and "a disinterested third party" rather than a collusive effort by ORHub and a company insider to moot the plaintiffs' claim.

¶13 After the evidentiary hearing, the superior court denied ORHub's motion for summary judgment and granted the plaintiffs' request to enjoin ORHub from converting any notes into equity without the noteholder's consent. In so holding, the superior court found "persuasive evidence" that the Wiggins transaction was "contrived" to manipulate ORHub's stock price "to trigger mandatory conversion" to the detriment of Buonincontri, "a non-consenting debtholder." The court went on to find that ORHub had not complied with the May 2019 Order because it failed to provide GAAP-compliant financial documents, had given "no persuasive reason" for its failure to provide the required information, and had offered a "woefully inadequate" certification for what it did provide. Rejecting ORHub's contention that a good faith dispute over the NDA had delayed its compliance with the May 2019 Order, the court found that ORHub

"appears to be looking for excuses not [to] provide" the required financial information and that its "complaints about the NDA are more ruse than legitimate excuse." The court awarded attorney fees and costs to the plaintiffs as a sanction for ORHub's noncompliance.

¶14　　After further litigation, the parties filed a Joint Notice of Settlement in August 2020. The matter was not dismissed at that time, however, pending ORHub's completion of its obligations under the parties' settlement agreement.

¶15　　In June 2021—over eighteen months after the plaintiffs served their Rule 11(c)(2) Notice, and approximately eight months after the parties filed their Joint Notice of Settlement—the plaintiffs filed a motion for sanctions against ORHub's counsel. In their sanctions motion, the plaintiffs asserted that ORHub's counsel had violated Rule 11 and A.R.S. § 12-349 by falsely claiming that the financial information ORHub provided to the plaintiffs complied with the May 2019 Order, by falsely asserting that "[a] legitimate dispute existed over the NDA," and by filing a meritless motion for summary judgment based on the purported mandatory conversion of the ORHub notes to equity.

¶16　　The superior court denied the plaintiffs' motion for sanctions against ORHub's counsel. Noting that "the conduct about which plaintiffs complain" in their sanctions motion "occurred more than a year and a half ago" and that the parties had "entered into a settlement agreement in the interim," the superior court stated that it was

> troubled by the prospect of plaintiffs waiting until July 2021 (after a settlement with ORHub is concluded) to bring a sanctions motion against ORHub's counsel for misconduct occurring in 2019, when the requested sanction is payment of more attorneys' fees.

¶17　　The court held that the "untimeliness" of the sanctions motion and the fact that the Rule 11(c)(2) consultation occurred over a year and half before the motion was filed were sufficient "reasons alone" to deny sanctions. The court also held that sanctions were not warranted in any event, finding no bad faith or misconduct on the part of ORHub's counsel.

¶18　　The action was subsequently dismissed consistent with the parties' settlement. Buonincontri and AXT appeal from the denial of their motion for sanctions against ORHub's counsel.

## JURISDICTION

**¶19**        As an initial matter, we examine our jurisdiction. In seeking dismissal of the action after the parties settled, the plaintiffs specifically disclaimed waiver of their right to appeal the denial of sanctions against ORHub's counsel. In these circumstances, we have jurisdiction under A.R.S. § 12-2101(A)(1). *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, 348-49, ¶¶ 12-15 (App. 2007) (holding that appellate court has jurisdiction to consider claims involuntarily dismissed before voluntary dismissal of remainder of action).

## DISCUSSION

**¶20**        Buonincontri and AXT argue that the superior court erred in finding that (1) their motion for sanctions was untimely, (2) their "good faith consultation" efforts did not satisfy the requirements of Rule 11(c)(2), and (3) ORHub's counsel did not engage in sanctionable misconduct. Noting that the superior court had previously imposed sanctions on ORHub for using "false representations and unpersuasive excuses" to avoid complying with the May 2019 Order, Buonincontri and AXT assert that ORHub's counsel, as the "messenger" of their clients' representations and excuses, "must also be sanctioned."

**¶21**        A trial court's ruling on a request for sanctions pursuant to Rule 11 will be affirmed absent an abuse of discretion. *Compassionate Care Dispensary, Inc. v. Ariz. Dep't of Health Servs.*, 244 Ariz. 205, 216, ¶ 36 (App. 2018). An appellate court gives great deference to a trial court's ruling on a Rule 11 motion not only because a trial court "is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11," but also because "[d]eference to the determination of courts on the front lines of litigation will enhance [the trial court's] ability to control the litigants before them." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402, 404 (1990). We will not, therefore, disturb a trial court's ruling on a request for Rule 11 sanctions unless the trial court's decision is manifestly unreasonable or untenable. *Quigley v. City Ct. of Tucson*, 132 Ariz. 35, 37 (App. 1982). Stated differently, this Court will find no abuse of discretion as long as the trial court's ruling "is supported by any reasonable evidence" in the record. *Maher v. Urman*, 211 Ariz. 543, 551, ¶ 25 (App. 2005) (citation omitted).

**¶22**        We review a superior court's application of A.R.S. § 12-349 *de novo*, but we will affirm the superior court's factual findings unless clearly erroneous. *Takieh v. O'Meara*, 252 Ariz. 51, 61-62, ¶ 39 (App. 2021). We may

affirm the superior court's ruling if it is correct for any reason apparent in the record, *id.*, bearing in mind that "[c]ourts should not impose sanctions lightly." *Compassionate Care*, 244 Ariz. at 216, ¶ 36 (alteration in original) (citation omitted).

**¶23**     We first address the superior court's determination that the imposition of sanctions on ORHub's counsel was not warranted because the sanctions motion was untimely.

**¶24**     As Buonincontri and AXT correctly assert, Rule 11, by its terms, "does not place time limits on when a motion for sanctions must be filed during the course of proceedings." Arizona courts have long recognized, however, that "[t]he lack of a specific time limit does not mean that there is no limit on when a Rule 11 motion should be filed." *Britt v. Steffen*, 220 Ariz. 265, 271, ¶ 25 (App. 2008). On the contrary, a request for sanctions must be made within a "reasonable time" of the offending conduct. *Id.* Moreover, the determination of the timeliness of such a request "is within the discretion of the trial court." *Id.* at ¶ 24. In denying the sanctions motion after declaring itself "troubled" by the plaintiffs' "waiting until July 2021 . . . to bring a sanctions motion against ORHub's counsel for misconduct occurring in 2019," the superior court implicitly found that the plaintiffs did not file the motion within a reasonable time.

**¶25**     Rule 11 and A.R.S. § 12-349 share the common purpose of promoting judicial economy by deterring meritless and wasteful litigation. *See Beitman v. Herrick*, CV-17-08229-PCT-JAT, 2022 WL 220492, slip op. at 1 (D. Ariz. Jan. 25, 2022) ("The purpose of [Federal Rule of Civil Procedure 11] is to promote judicial economy by deterring baseless filings, thereby streamlin[ing] [court] administration and procedure . . . .") (citation omitted);[1] *Solimeno v. Yonan*, 224 Ariz. 74, 81-82, ¶ 32 (App. 2010) (affirming imposition of sanctions under A.R.S. § 12-349 based on disclosure violation that "significantly delayed and expanded the litigation" by resulting in a mistrial and requiring a new trial, thereby wasting judicial resources).

**¶26**     To promote judicial economy, a sanctions motion should, as a general rule, be filed promptly upon discovery of the alleged violation. *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely.").

---

[1] Arizona courts recognize case law interpreting the federal counterpart to Rule 11 as persuasive. *See James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Prot.*, 177 Ariz. 316, 318-19 (App. 1993).

Promptness in filing sanctions motions serves, *inter alia*, to deter further misconduct and to foster judicial efficiency by allowing courts to address and resolve what are typically fact-intensive disputes close in time to the underlying events. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) (requiring "prompt action by a litigant whenever a [Rule 11] violation appears" because "[p]romptness in filing valid [Rule 11] motions will serve . . . to foster efficiency" and "in many instances will deter further violations of Rule 11 which might otherwise occur during the remainder of the litigation"). Here, the plaintiffs' sanctions motion was based on purportedly wrongful conduct by ORHub's counsel that had occurred a year and a half earlier, a delay that is excessive on its face. *See Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827, 844 (N.D. Ind. 1995) (denying, as "untimely as a matter of law," an "extremely late" Rule 11 motion filed more than "seventeen months after" the offending conduct).

¶27 Moreover, the basis for the plaintiffs' motion for sanctions against ORHub's counsel pursuant to Rule 11 and A.R.S. § 12-349 was the same as the basis for the Rule 65(f) sanctions they had sought against ORHub itself 18 months earlier. Had the plaintiffs sought the imposition of sanctions against ORHub's counsel at the same time it sought sanctions against ORHub, the superior court could have addressed both requests at a single evidentiary hearing. Instead, by seeking sanctions against ORHub prior to the November 2019 evidentiary hearing and then waiting 18 months to seek sanctions against ORHub's counsel based on the same conduct, the plaintiffs forced the superior court to address the same issues twice. In so doing, the plaintiffs wasted judicial resources and unnecessarily expanded the proceedings in contravention of the central purpose of Rule 11 and A.R.S. § 12-349. The superior court can hardly be said to have abused its discretion by refusing to apply Rule 11 or A.R.S. § 12-349 in a manner contrary to their intended purpose. *Cooter & Gell*, 496 U.S. at 393 (Federal Rule of Civil Procedure 11 "must be read in light of concerns that it will spawn satellite litigation"); *Autrey v. United States*, 889 F.2d 973, 986 n.20 (11th Cir. 1989) (stating "we look with disfavor on a party's use of Rule 11 or the ethical rules as combative tools" and "will not tolerate attempts to use the ethical rules in a way contrary to the spirit of those very rules").

¶28 Buonincontri and AXT assert that they had good reason to delay filing their motion for sanctions against ORHub's counsel until after ORHub had satisfied its obligations under the parties' settlement agreement. Seeking sanctions against ORHub's counsel earlier, they contend, risked creating "a conflict of interest" between ORHub and its counsel that might have required ORHub's counsel to withdraw, thereby "jeopardiz[ing] the parties' fragile settlement negotiations."

**¶29** The plaintiffs' justification for their delay in seeking sanctions against ORHub's counsel is unpersuasive. The premise of their argument—that the potential conflict between ORHub and its counsel did not arise until they filed their motion for sanctions against ORHub's counsel in June 2021—is simply incorrect; a potential conflict between ORHub and its counsel was apparent once the plaintiffs served their Rule 11(c)(2) Notice on ORHub's counsel in November 2019. In any event, the fact that the plaintiffs perceived a tactical advantage to be gained from delay in filing their sanctions motion does not entitle them to act in disregard of the judicial interests served by the prompt filing of such motions. *Kaplan v. Zenner*, 956 F.2d 149, 152 (7th Cir. 1992) ("Prompt filings of motions for sanctions after discovery of an abuse best serve both the systemic and case-specific deterrent functions of Rule 11.").

**¶30** We conclude that, after imposing sanctions on ORHub for its litigation conduct, the superior court did not abuse its discretion in denying, as untimely, a subsequent motion for the imposition of additional sanctions on ORHub's counsel based on the same conduct. Because the subsequent motion was filed so late in the proceedings as to defeat the interests of judicial economy and efficiency that Rule 11 and A.R.S. § 12-349 were meant to promote, the superior court's implicit determination that the subsequent motion was not filed within the requisite "reasonable time" was not manifestly unreasonable, untenable, or clearly erroneous. *See Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 155, 158-59 (2d Cir. 2010) (vacating sanctions imposed pursuant to a Rule 11 motion that was not filed until more than "some nine months" after the offending conduct and noting that Rule 11 is intended "to reduce, if not eliminate, the unnecessary expenditure of judicial time and adversary resources").

**¶31** Because we find that the superior court did not abuse its discretion in denying the plaintiffs' sanctions motion as untimely, we need not address their alternative arguments that the superior court abused its discretion in finding that their pre-filing consultation did not satisfy the requirements of Rule 11(c)(2) and in finding that ORHub's counsel did not engage in sanctionable conduct.

## CONCLUSION

**¶32** We conclude that the superior court acted within its discretion by denying the plaintiffs' request for the imposition of Rule 11 and A.R.S. § 12-349 sanctions against the opposing party's counsel. We therefore affirm.

